**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ALCON VISION, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| **JOSEPH MCGINLEY,** | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Alcon Vision, LLC (hereinafter "Alcon") files the following Original Complaint for Damages and Injunctive Relief against Defendant Joseph McGinley ("McGinley" or "Defendant").

**INTRODUCTION**

1. McGinley, Alcon's former Surgical Training Manager Glaucoma, submitted his resignation on October 5, 2023. As Alcon's Surgical Training Manager, McGinley was provided and, indeed, created some of Alcon's most proprietary information. While at Alcon, and using its confidential information, McGinley developed and improved upon the Glaucoma division's training program and trained Alcon's nationwide sales team to effectively sell Alcon's glaucoma products. This required him not only to be an expert on the products themselves, but an expert on how to sell Alcon's glaucoma products to its customers. Additionally, as a member of the Glaucoma Division's Leadership Team, McGinley was entrusted with confidential information regarding Alcon's current and future sales, marketing and compliance plans. Despite having signed not one, but two, agreements containing noncompetition covenants, McGinley now intends to take all of the confidential knowledge he has about Alcon's glaucoma training, marketing, sales, and

products (knowledge which Alcon has spent considerable time and money to develop) and create a new sales team for a company poised to enter the glaucoma market. McGinley's restrictive covenants prohibit him from holding such a position as it would give his new employer, Iantrek, an unfair competitive advantage against Alcon. Therefore, Alcon brings this lawsuit.

## PARTIES, JURISDICTION AND VENUE

2. Alcon is a Texas limited liability company whose principal place of business is located in Fort Worth, Texas. Its sole member is Ciba Vision, LLC which is a Delaware limited liability company with is principal place of business in Fort Worth, Texas. The sole member of Ciba Vision, LLC[1] is Alcon Laboratories, Inc., a Delaware corporation with its principal place of business in Fort Worth, Texas.

3. McGinley is a former employee of Alcon who currently resides in Maryland. Upon information and belief, McGinley intends to remain in Maryland and therefore is a citizen of Maryland.

4. This Court has personal jurisdiction over McGinley pursuant to the mandatory forum selection clause contained in McGinley's Non-Competition, Non-Solicitation, Non-Disclosure, and Intellectual Property Assignment Agreement ("Agreement"). Specifically, Paragraph 22 of the Agreement states that "[b]oth parties consent to personal and subject matter jurisdiction in the state courts of Tarrant County, Texas or the United States District Court for the Northern District of Texas as the only appropriate venue for any dispute regarding this Agreement." (Ex. A, Agreement, ¶ 22).[2]

---

[1] Ciba Vision has a governing body similar to a Board of Directors for a corporation. The individuals who serve as this governing body are called "officers." The officers of Ciba Vision, LLC are individuals, both of whom are residents of Texas.

[2] A true and correct copy of this Agreement is attached hereto as **Exhibit A.**

5.     This Court possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and 28 U.S.C. §1367. For the purposes of diversity jurisdiction, Alcon is a citizen of Delaware and Texas, as the citizenship of a limited liability company is determined by the citizenship of all of its members and not its state of formation and principal place of business. *See FCCI Ins. Co. v. Marine Tech Servs.*, No. 4:20-CV-2716, 2021 WL 3377575, at *1 (S.D. Tex. July 6, 2021), *report and recommendation adopted,* No. 4:20-CV-2716, 2021 WL 3375943 (S.D. Tex. Aug. 3, 2021); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Therefore, this controversy is between citizens of different states.

6.     This controversy exceeds the sum or value of $75,000.00 (exclusive of interests and costs).

7.     Venue is appropriate because the parties agreed to a venue of the United States District Court for the Northern District of Texas, Fort Worth Division. (Exhibit A, ¶ 22; Exhibit C, ¶ 18).

## FACTS

### McGinley's Employment With Alcon

8.     Based in Fort Worth, Texas, Alcon is the largest eye care company in the world with complementary businesses in Surgical and Vision Care. Alcon is a leader in the Microinvasive Glaucoma Surgery (MIGS) space with its Hydrus® Microstent device providing confident and efficient microstent delivery, which allows patients with mild to moderate glaucoma to control their glaucoma with the opportunity to reduce or eliminate their dependence on eye drop medication.

9.     Alcon fhired McGinley in January 2022, as its Surgical Glaucoma Manager in Baltimore, Maryland.

10. On August 1, 2022, McGinley was promoted to the position of Surgical Training Manager Glaucoma in the US Surgical Training organization. McGinley worked for Alcon remotely out of his home office in Maryland, but routinely traveled to Fort Worth for important meetings and other Alcon business.

11. As Alcon's Surgical Training Manager Glaucoma, McGinley was responsible for training and preparing Alcon Surgical personnel in the US to be technical glaucoma product experts, effective sales representatives and to meet their sales objectives. In summary, McGinley taught Alcon's nationwide sales team how to effectively sell its glaucoma products. This required him not only to be an expert on the products themselves, but an expert on how to sell Alcon's glaucoma products to its customers. McGinley redeveloped and improved upon Alcon's glaucoma sales training program during his employment at Alcon. He was responsible for planning, developing and providing training and staff development programs, using knowledge of the effectiveness of methods such as classroom training, demonstrations, on-the-job training, meetings, conferences, workshops, virtual and on-demand training in a remote environment.

12. In his position, McGinley was also responsible for working with a cross-functional team in Sales, Marketing and Compliance to drive executional efforts against Alcon's marketing strategy. As a member of the Glaucoma Leadership Team, McGinley had intimate knowledge of Alcon's confidential current and future plans for the glaucoma division, including but not limited to, product and pricing plans, sales and marketing plans, and training plans. He also helped develop the surgeon SOP for defining surgeon efficiency in order to implant Hydrus. He also had knowledge of, and access to, which surgeons were deemed proficient in Alcon glaucoma surgical products.

13.     McGinley was a highly paid employee who was key to Alcon's development of its Confidential Information and customer goodwill in its glaucoma division.

14.     McGinley earned $170,000 of base salary annually in his position.[3] In addition, he was eligible to participate in the Alcon Short Term Incentive Plan, which entitled McGinley to earn 20% of his annual base salary provided certain targets were met. Exhibit B.

15.     McGinley also received a signing bonus in the amount of $12,000 (less applicable tax deductions) when he received his promotion. *Id.* His offer letter stated that if McGinley resigned his employment within 18 months of his start date, McGinley would be required to repay the entire signing bonus. *Id.*

16.      McGinley also received a one-time transition bonus of $98,000 and was eligible for a $102,000 retention bonus when he was promoted.[4] *Id.*

17.     McGinley was also eligible to participate in the Alcon Long Term Incentive Plan (LTI), with an LTI Award target of up to 15% of his annual salary. *Id.*

18.     On February 22, 2023, McGinley was awarded 259 Restricted Stock Units (RSUs) pursuant to Alcon's Long Term Incentive Plan.[5]

19.     McGinley was required to sign a Non-Competition, Non-Solicitation, Non-Disclosure, and Intellectual Property Assignment Agreement (the "Agreement") as a condition to him receiving this promotion. **Exhibit A**.

---

[3] A true and correct copy of McGinley's offer letter is attached hereto as **Exhibit B.**

[4] The retention bonus was to be paid out in two parts: half was paid in August 2023 and the other the other half to be paid in August 1, 2024.

[5] A true and correct copy of this Restricted Stock Units Award Agreement ("RSUAA") is attached hereto as **Exhibit C.**

20. After McGinley electronically signed the Agreement on August 1, 2022, and in reliance on the Agreement which McGinley signed, Alcon provided McGinley with access to its Confidential Information[6] and trade secrets information. McGinley received this Confidential Information and trade secrets information subsequent to signing the Agreement and McGinley continued to receive, and create, such Confidential Information and trade secrets information throughout the remainder of his employment with Alcon.

## Terms of the Agreement

21. By entering into the Agreement, McGinley promised to comply with certain post-employment obligations related to the non-disclosure of Alcon's Confidential Information, including, but not limited to:

> **Confidential Information.** I will not transmit, download, or otherwise remove any Confidential Information from any Company or Group work premises or computer, nor use or disclose Confidential Information other than as necessary to perform my job duties for the Company or Group or per Section 7, at any time during and after my employment, without the Company's prior written consent.

(Agreement § 6).

22. McGinley also promised to comply with certain post-employment obligations related to non-competition, non-solicitation of customers, and non-recruitment of employees:

> **9. Non-Competition.** Without limiting my obligations under Section 8, during my employment with the Company or any member of the Group and for twelve (12) months after my employment ends, I will not, directly or indirectly, (a) own, operate, finance, or control any Competing Organization[7] in the Restricted Territory[8] other than as a passive owner of not more than five percent (5%) of the

---

[6] Confidential Information is defined in ¶ 31(a) of the Agreement.

[7] Competing Organization is defined as "any person or entity engaged in research, development, production, marketing or selling of a Competing Product within any geographic area(s) where the Company or the Group conducts any business while these covenants are in effect." (Agreement, ¶ 21(c))

[8] Restricted Territory is defined as "any state, territory, or province within the United States of America or any other country (or political subdivision thereof) (i) in which [McGinley] performed services for the Company or the Group during the Pre-Termination Period; (ii) over which [McGinley] has sales or management responsibilities

outstanding stock of a Competing Organization in which I have no active participation; or (b) render services to, given advice to, consult with, or be employed by a Competing Organization in the Restricted Territory if such services, advice, consultation, or employment involve (i) selling, or assisting others in selling, Competing Products[9]; or (ii) developing or implementing strategies to compete with the Company or the Group with respect to Competing Products; or (iii) directly or indirectly supervising or managing employees or other personnel who compete with the Company or the Group with respect to Competing Products; or (iv) utilizing or disclosing Confidential Information.

**10. Non-Soliciation.** During my employment with the Company or any member of the Group and for twelve (12) months after my employment ends, I will not, directly or indirectly, attempt to or actually call on, contact, canvass, service or solicit any Restricted Customer to promote, market, describe or sell a Competing Product.

**11. Non-Recruitment.** During my employment with the Company or any member of the Group and for twenty-four (24) months after my employment ends, I will not, directly or indirectly, attempt to or actually (a) solicit or recruit any Restricted Person to obtain employment with or provide services to a Competing Organization in a role in which the Restricted Person will perform activities or services similar to that the Restricted Person performed for the Company or the Group in the Pre-Termination Period, (b) interfere with the performance of any such persons of their duties for the Company; or (communicate with any Restrictive Person for the purposes described in Section 11(a) and (b).

**12. Non-Assistance.** During the time periods in this Agreement's covenants, I will not assist any person or entity in performing any activity that this Agreement prohibits me from performing myself.

### McGinley's Non-Compete Contained in the Long Term Incentive Plan

23. In recognition of his contributions to the company, on February 22, 2023, McGinley was awarded 259 Restricted Stock Units (RSUs) pursuant to Alcon's Long Term Incentive Plan

---

for the Company or the Group during the Pre-Termination Period; (iii) in which the Company or the Group employed or engaged personnel [McGinley] directly or indirectly supervised or managed during the Pre-Termination Period; or (iv) about which [McGinley] had access to Confidential Information during the Pre-Termination Period. (Agreement, ¶ 31(i))

[9] Competing Product is defined as "any product, system, service, process or practice that is produced, provided, marketed or sold to any person or entity other than a member for the Group, which is substantially similar to or competes directly or directly with a product, system, service, process, or practice of the Company or the Group that [McGinley] had access to during [his] employment with the Company or any member of the Group." Agreement 31(d))

(LTI). The Restricted Stock Unit Award Agreement ("RSUAA") contained the following restrictive covenants:

> **FAIR COMPETITION.** If you reside and are employed by the Company in the United States of America, in consideration of your Award and the Company's promise to provide you with access to sensitive, confidential, proprietary and/or trade secret information (collectively, "Confidential Information"), which you agree constitutes adequate and sufficient mutually-agreed consideration, you agree that, during your employment and for one year after the termination of your employment with the Company for any reason whatsoever, you shall not, without the Company's prior written consent, directly or indirectly, for yourself or for any other person or entity, as agent, employee, officer, director, consultant, owner, principal, partner, shareholder, or in any other individual or representative capacity: (a) engage in or participate in any activity which competes, directly or indirectly, with any Company activity, product or service that you engaged in, participated in, or had access to Confidential Information about during your last 24 months of employment with the Company; or (b) directly or indirectly assist anyone in any of the activities listed above. These obligations shall apply to any geographic area in the United States of America for which you had any job responsibilities or access to confidential information during your last 24 months of employment with the Company. . . .To the extent you have any additional restrictive covenant agreements with the Company, Section 16 shall be read in conjunction with those restrictive covenant agreements and shall not supersede those agreements. In the event a Court determine Section 16 is not enforceable, your separate restrictive covenant with the Company shall control.

(Exhibit C, ¶ 16)

24. McGinley accepted this award by electronic signature on March 20, 2023.

## McGinley's Resignation

25. On October 5, 2023, McGinley notified his direct supervisor, Alastair Douglas (Head, Performance Development, US Surgical) of his resignation. McGinley gave two weeks' notice and advised Mr. Douglas that he was leaving Alcon to develop the sales team at Iantrek Inc. ("Iantrek"). Shortly thereafter, while meeting with Human Resources and Mr. Douglas, McGinley

was reminded of the noncompete he had with the company. McGinley denied he had ever signed a non-compete with Alcon.[10]

26. McGinley then notified Chuck Marshall (head of US Surgical Glaucoma Sales & Marketing and Academic Accounts) of his departure. Mr. Marshall also reminded McGinley of his noncompetition agreements with Alcon and warned McGinley that his employment with Iantrek would violate the terms of those agreements. Again, McGinley stated he did not have a non-compete with Alcon.

27. Upon receiving McGinley's notice of resignation Alcon discontinued his access to Alcon systems and relieved him of all job responsibilities.

28. Upon information and belief, McGinley will begin his new job at Iantrek on October 23, 2023.

## FIRST CAUSE OF ACTION
**(Breach of Contract – the Agreement)**

29. Alcon repeats and re-alleges the allegations set forth in the paragraphs above as if they are fully set forth herein.

30. Non-compete agreements in Texas are governed by sections 15.50 through 15.52 of the Texas Business and Commerce Code.

31. The restrictive covenants contained in the Agreement meet all the requirements of Texas law because they are ancillary to or part of an otherwise enforceable agreement, they contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, and they

---

[10] Upon information and belief, Iantrek is currently in the late stages of FDA approvals for its micro-interventional eye surgery (MIGS) product. When Iantrek is allowed to enter the market, its product will be in direct competition with Alcon's Hydrus™.

do not impose greater restraint than is necessary to protect the confidential information, customer goodwill or other business interest of Alcon.

32. For valid consideration, including the provision of, and access to, its proprietary and trade secret information, McGinley agreed he would not, during his employment and for twelve months after his employment with Alcon ended, render services to, give advice, to, consult with, or be employed by a Competing Organization in the Restricted Territory if such services, advice, consultation, or employment involve: selling or assist others in selling Competing Products; developing or implementing strategies to compete with the Company with respect to Competing Products; will be directly or indirectly supervising or managing employees or other personnel who compete with Alcon with respect to Competing Products.

33. The restrictions in McGinley's Agreement are reasonable in duration, scope and narrowly tailored to protect Alcon's legitimate business interests in safeguarding its confidential information and client, prospective client and vendor relationships. McGinley agreed to the reasonableness of these restrictions when he signed the Agreement and agreed that these restrictions were necessary to protect the Company's legitimate business interests, including but not limited to, its trade secrets, confidential business information, customer relationships and customer goodwill. Agreement, ¶ 19.

34. McGinley breached his Agreement by accepting employment at Iantrek, a Competing Organization as defined by the Agreement. Upon information and belief, in his new position at Iantrek, McGinley will be responsible for building Iantrek's nationwide salesforce, who will be responsible for selling Competing Products. As such, McGinley will be assisting others in selling Competing Products; developing or implementing strategies to compete with the Company with respect to Competing Products; will be directly or indirectly supervising or managing

employees or other personnel who compete with Alcon with respect to Competing Products. Such conduct would be in direct violation of his Agreement.

35. Further, Alcon sees no reasonable way McGinley could engage in such a role for Iantrek without utilizing and/or disclosing Alcon's Confidential Information.

36. McGinley's aforesaid actions constitute a material breach of McGinley's Agreement.

37. All conditions precedent to allowing Alcon to enforce the Agreement have been performed or have occurred.

38. As a direct and proximate result of his actions, McGinley has caused and will continue to cause Alcon to suffer irreparable injury if he is not restrained. Alcon has spent millions carefully researching, developing and implementing its training program for its Glaucoma Division over the course of years. Not only has Alcon lost the employee responsible for the development and implementation of this program, but McGinley will be able to give Iantrek an unfair competitive advantage when it enters the glaucoma market by using all of the Confidential Information he learned and developed at Alcon if he is allowed to create Iantrek's new sales force for its glaucoma product.

39. Alcon is entitled to a temporary restraining order and a preliminary injunction prohibiting McGinley's ongoing breaches of his Agreement with Alcon.

40. By reason of the foregoing, McGinley is also liable to Alcon for damages in an amount to be determined at trial.

41. Because of this breach of contract, Alcon has been required to retain counsel to prosecute its claims. Alcon has agreed to pay its counsel for the reasonable attorneys' fees and expenses incurred on Alcon's behalf in this lawsuit. Pursuant to Texas Civil Practices & Remedies

Code §38.001, and pursuant to Paragraph 20 of the Agreement, Alcon is entitled to recover its reasonable and/or necessary attorneys' fees and costs incurred in the prosecution of this lawsuit.

42. McGinley and Alcon have agreed to waive any right to a trial by jury related to the claims in this action. (Agreement, ¶ 23)

## SECOND CAUSE OF ACTION
### (Breach of Contract – the RSUAA)

43. Alcon repeats and re-alleges the allegations set forth in the paragraphs above as if they are fully set forth herein.

44. Non-compete agreements in Texas are governed by sections 15.50 through 15.52 of the Texas Business and Commerce Code.

45. The restrictive covenant contained in the RSUAA meets all the requirements of Texas law because it is ancillary to or part of an otherwise enforceable agreement, it contains reasonable limitations as to time, geographical area, and scope of activity to be restrained, and it does not impose greater restraint than is necessary to protect the confidential information, customer goodwill or other business interest of Alcon.

46. The RSUAA is a valid and enforceable contract. For valid consideration, including the provision of, and access to, proprietary, confidential and trade secret information, as well as the provision of stock options via the RSUAA under Alcon's Long Term Incentive Plan, McGinley agreed he would not engage in certain competitive activities against Alcon for a period of one year after his employment ended with Alcon for any reason.

47. By accepting a position at Iantrek in which he will be building and developing its glaucoma sales team, McGinley will be engaging in or participating in activities which compete, directly or indirectly, with activities, products or services McGinley engaged in, participated in, or about which he had access to Confidential Information during his last 24 months of employment

with the Company, or he will be directly or indirectly assisting Iantrek in the activities listed above. As such, McGinley's new employment squarely breaches the noncompetition covenant contained in his RSUAA.

48. McGinley's continued employment with Iantrek will cause him to continue his unlawful conduct, which harms Alcon's ability to compete fairly in the marketplace, and which will result in immediate, irreparable harm to Alcon's business interests and employee relationships.

49. Alcon is entitled to a temporary restraining order and a preliminary injunction prohibiting McGinley's ongoing breaches of his RSUAA with Alcon.

50. By reason of the foregoing, McGinley is also liable to Alcon for damages in an amount to be determined at trial.

51. Because of this breach of contract, Alcon has been required to retain counsel to prosecute its claims. Alcon has agreed to pay its counsel for the reasonable attorneys' fees and expenses incurred on Alcon's behalf in this lawsuit. Pursuant to Texas Civil Practices & Remedies Code §38.001, Alcon is entitled to recover its reasonable and/or necessary attorneys' fees and costs incurred in the prosecution of this lawsuit.

52. **WHEREFORE**, Alcon respectfully requests that the Court:

(a) Enter temporary and preliminary injunctions preventing from further violations of the Agreement and the RSUAA, including but not limited to:

(i) Enjoining him McGinley from working for Iantrek in a position violative of his noncompetition provisions of his Agreement and RSUAA;

(ii) Enjoining him from using or disclosing any Alcon confidential information or trade secrets (as defined in the Agreement and RSUAA) to any third party or for

McGinley's benefit.

      (b)     Grant injunctive relief preventing McGinley from further violations of the Agreement and RSUAA;

      (c)     Enter an order tolling the restrictions in the Agreement and the RSUAA based on the period of McGinley's violations;

      (d)     Grant Alcon judgment against McGinley for damages and all costs, attorneys' fees and other litigation expenses; and

      (e)     Grant Alcon such other and further relief as the Court deems just, equitable and proper.

Respectfully submitted,

By: */s/ Rachel Z. Ullrich*
Rachel Z. Ullrich
Texas State Bar No. 24003234
rullrich@fordharrison.com
David R. Anderson
Texas State Bar No. 24128388
danderson@fordharrison.com

**FORDHARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701

**ATTORNEYS FOR PLAINTIFF ALCON VISION, LLC**

WSACTIVELLP:112772494.1